IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ESTATE OF RODNEY HIRATA, AUDREY YONESHIGE, TRUSTEE AND BENEFICIARY,<br><br>    Plaintiff,<br><br>    vs.<br><br>JOHN J. IDA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, ET AL.,<br><br>    Defendant.<br>_____ | CIVIL NO 10-00084 LEK |

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION TO DISMISS COMPLAINT**

On April 5, 2010, Defendants John J. Ida, in his individual and official capacities, Lorrin T. Matsunaga, in his individual and official capacities, and Urban Works, Inc. ("UWI") (collectively "Defendants") filed a Motion to Dismiss Complaint ("Motion"). Plaintiff Estate of Rodney Hirata, Audrey Yoneshige, Trustee and Beneficiary ("Plaintiff") filed its memorandum in opposition on April 27, 2010, and Defendants filed their reply on May 3, 2010. This matter came on for hearing on May 18, 2010. Appearing on behalf of Defendants was Keith Hiraoka, Esq., and appearing on behalf of Plaintiff was Clayton Kimoto, Esq. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Defendants' Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set

forth below.[1]

## BACKGROUND

Plaintiff filed the instant Employee Retirement Income Security Act ("ERISA") action on February 19, 2010. Rodney Hirata was a UWI employee from July 1, 1985 until his death on December 19, 2007.  He became a senior associate on July 28, 1988.  [Complaint at ¶ 15.]  Hirata and Audrey Yoneshige began dating on May 6, 1989, and attended UWI functions together over the years.  Yoneshige was known as Hirata's companion and/or significant other.  They were married on July 7, 2006.  [Id. at 11-14.]  John Ida and Lorrin Matsunaga are, and were at all relevant times, UWI's president and vice president, respectively. The Complaint alleges that they are the administrators for the alleged ERISA plans at issue in this case.  [Id. at ¶¶ 7-8.]

The January 1991 UWI General Employment Policy Manual ("Manual") refers to group life insurance provided by General American Life Insurance Company ("Policy").[2]  The Policy states that the death benefit was three times the employee's annual salary, up to $150,000.  The Complaint also alleges that, as part of UWI's ERISA benefits package, Hirata was entitled to five percent ownership in UWI's stock.  Hirata had the Manual and the

---

[1] On April 8, 2010, the parties filed the Consent to Jurisdiction by United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1).

[2] The Policy is attached to the Complaint as Exhibit 1.

2

Policy in his possession up to his death.  [Id. at ¶¶ 16-17.] The instant case arises from UWI's failure to inform Hirata of the cancellation of the Policy in 2001 and its failure to provide a timely valuation of Hirata's stock shares upon Yoneshige's request after Hirata's death.

Hirata was diagnosed with cancer on August 29, 2007. The next day, Yoneshige informed Ida of Hirata's diagnosis.  On September 12, 2007, an oncologist informed Hirata that his condition was terminal and that he had a remaining lifespan of one to two years.  [Id. at ¶¶ 18-20.]

**I.   Policy Cancellation**

According to the Complaint, from September 2007 to December 2007, Yoneshige went to UWI four times and spoke with Ida.  Hirata had numerous doctors' appointments during that period.  Ida was updated about Hirata's health status each time Ida called to inquire about the appointments.  Ida did not mention the cancellation of the Policy during any of these conversations.  [Id. at ¶¶ 24-29.]

On December 17, 2007, Hirata and Yoneshige met with Matsunaga in Hirata's hospital room.  Prior to that meeting, Hirata and Yoneshige learned that Hirata's status at the hospital was going to be changed from acute to hospice and that Hirata's medical insurance would not cover the expenses of hospice care. Hirata and Yoneshige suggested to Matsunaga that the Policy

benefits be used to pay for those expenses.  Matsunaga agreed with the idea and said he would talk to Ida about it.  The next day, Yoneshige called UWI and discussed Hirata's up-coming status change with Matsunaga.  In addition, Matsunaga and Ida visited Hirata at the hospital at different times, but neither mentioned the cancellation of the Policy.  Hirata passed away on December 19, 2007.  [Id. at ¶¶ 30-33.]

On February 14, 2008, Ida called a meeting with Yoneshige at UWI.  Also present were Matsunaga and Kathy Hood, UWI's office manager.  At the meeting, UWI presented information about the following: an HMSA life insurance policy, which Hirata did not know about; Hirata's stock shares; and Hirata's 401K account.  No one mentioned the cancellation of the Policy.  [Id. at ¶¶ 34-36.]

On February 22, 2008, Yoneshige called UWI, and Hood informed her that Ida had lapsed the Policy.  This was the first time that Yoneshige learned that the Policy had lapsed.  She told Hood to inform Ida that Hirata thought he always had the Policy.  Yoneshige did not receive any further information from Ida about the lapsing of the Policy.  On February 25, 2008, Yoneshige spoke with a representative of Met Life, the successor to General American Life.  Yoneshige learned that the Policy, which was effective May 1, 1990, was cancelled on February 28, 2001.  She also learned that the Policy contained a conversion option, which

would have allowed Hirata to continue the Policy after UWI cancelled it. [Id. at ¶¶ 37-40.]

After speaking with Met Life, Yoneshige called Matsunaga and confronted him about the cancellation of the Policy. Although he initially claimed that Hirata knew the Policy had been cancelled, Matsunaga later admitted that he, like Hirata, did not know the Policy had been cancelled. According to the Complaint, Matsunaga admitted that, as a UWI principal, he should have known about the cancellation, and he took full responsibility for Hirata's ignorance of the cancellation. [Id. at ¶¶ 37-41.]

The Complaint states that Hirata never knew the Policy had been cancelled and that he valued the Policy. The Complaint alleges that, if he had been aware of the cancellation, he would have exercised the conversion option. [Id. at ¶¶ 51-52.] At a May 6, 2008 meeting involving Yoneshige, her attorney - Clayton Kimoto, Esq., Ida, Matsunaga, and counsel for UWI - Frank Goto, Esq., it was confirmed that no letter which was sent to Hirata to inform him of the Policy's cancellation existed. [Id. at ¶ 42.] UWI produced an April 28, 2008 letter from John Khil, Esq., opining that, under the circumstances, UWI was not required to pay any benefits under the Policy to Hirata's beneficiaries. [Exh. 2 to the Complaint.]

Count II of the Complaint alleges that Defendants

violated 29 U.S.C. § 1109(a)(1) by failing to notify Hirata and/or his beneficiary of the February 28, 2001 cancellation of the Policy until February 28, 2008.  Plaintiff alleges that this constitutes a breach of the ERISA plan administrator's fiduciary duties and a deliberate pattern of deception, actionable pursuant to 29 U.S.C. § 1132(a)(2) and (3).  The Complaint seeks economic damages of $150,000.  [Complaint at ¶¶ 56-58.]

## II.  Stock Valuation

UWI retained Gary Kuba, a certified public accountant, to do a valuation of Hirata's UWI stock.  Kuba was to send UWI the valuation within seven to ten days after the May 6, 2008 meeting.  On June 3, 2008, Goto wrote Yoneshige a letter stating that Kuba requested additional information from UWI and that Goto did not know when Kuba would complete the valuation.  In his July 5, 2008 response, Kimoto pointed out that, while Hirata was alive, he never had a problem obtaining information about the status of his shares.  On July 11, 2008, Goto wrote a letter to Yoneshige apologizing for the delay, but noting that it was out of UWI's control.  On October 15, 2008, Kimoto wrote a letter stating that Yoneshige still had not received the valuation and that she needed it for tax purposes.  Yoneshige sent another letter to Goto requesting an update on December 18, 2008.  The next day, Goto responded that the valuation should be available soon.  Yoneshige did not receive the valuation figure until

December 2009, after she signed a confidentiality agreement. [Id. at ¶¶ 42-49.]

Count I of the Complaint alleges that Defendants violated 29 U.S.C. § 1132(c)(1)(B) by failing to respond to Yoneshige's request for information about the valuation of Hirata's stock within thirty days after the request. Plaintiff alleges that this violation is actionable pursuant to 29 U.S.C. § 1132(a)(1)(A). The Complaint seeks a penalty of $51,000. [Id. at ¶¶ 53-55.]

The Complaint prays for the following relief: a $54,000 fine payable to Plaintiff pursuant to Count I; remedial damages of $150,000 pursuant to Count II or, in the alternative, equitable relief in the form of restitution, specific performance, and/or a constructive trust of $150,000; attorney's fees and costs; prejudgment interest; and other appropriate relief.

### III. **Defendants' Motion**

In the instant Motion, Defendants first argue that this Court should dismiss Count II because, even if Defendants breached their fiduciary duties by failing to notify Hirata of the cancellation of the Policy, ERISA does not provide for the remedy that Plaintiff seeks. Defendants argue that under Horan v. Kaiser Steel Retirement Plan, 947 F.2d 1412 (9th Cir. 1991), neither § 1109 nor § 1132(a) allow for individual beneficiaries

to bring a breach of fiduciary claim if the only remedy sought is for her own benefit.  ERISA only allows actions seeking to benefit the plan as a whole.  Defendant also argues that, in <u>Peralta v. Hispanic Business, Inc.</u>, 419 F.3d 1064 (9th Cir. 2005), the Ninth Circuit recognized that an employer has the right to eliminate an ERISA-governed benefit plan and, although ERISA requires the employer to give its employees timely notice of the termination of benefits, § 1132(a)(3) does not authorize an award of monetary damages for the failure to provide such notice.

As to the stock valuation claim, Defendants argue that Plaintiff is only entitled to § 1132 relief if Hirata's stock ownership was part of an employee stock ownership plan ("ESOP") subject to ERISA.  To be subject to ERISA, an ESOP must be either a "welfare plan" as defined by 29 U.S.C. § 1002(1) or a "pension plan" as defined by 29 U.S.C. § 1002(2).  Defendants argue that the Complaint does not contain any factual allegations supporting the conclusion that Hirata's stock ownership was part of an ERISA welfare plan or pension plan.  Defendants therefore argue that the Court should dismiss Count I.

**IV. <u>Plaintiff's Memorandum in Opposition</u>**

In its memorandum in opposition, Plaintiff argues that the cases Defendants cite for the proposition that a breach of fiduciary duty is not actionable unless the plaintiff seeks

relief on behalf of the plan are distinguishable because the breaches in those cases were merely negligent.  In the present case, Defendants made affirmative misrepresentations when they failed to inform Hirata and/or Yoneshige of the cancellation of the Policy.  In fact, <u>Peralta</u> expressly recognized the availability of such relief but found that the facts of that case did not support it.

As to the stock valuation claim, Plaintiff argues that Defendants misstate the law and that an ESOP is an ERISA pension plan because it is an ERISA retirement benefit plan.  Plaintiff argues that the Complaint pleads sufficient facts to establish that Hirata owned the shares via an ERISA plan.  The Complaint alleges that in January 1991, UWI announced its ERISA benefits package by which Hirata became entitled to the shares if he remained with the company.  After Hirata's death, Ida called a meeting to discuss Hirata's 401K plan and presented information about Hirata's shares at this meeting.

**V.    Defendants' Reply**

In their reply, Defendants argue that Count II is actually a state law claim for misrepresentation and such claims are preempted by ERISA.  To the extent that Plaintiff seeks relief under § 1132(a)(3), the claim should be dismissed because money damages are not available under section (3).

As to the stock valuation claim, Defendants argue that

Plaintiff's conclusory allegations are insufficient to state a claim.  Plaintiff essentially claims that, since Hirata owned UWI shares, he must have been a participant in an ERISA ESOP.  Without a legal explanation why Hirata held the UWI shares, this Court should not accept the legal conclusion that he participated in an ERISA ESOP.  Defendants note that, in an ESOP, the employee typically does not hold the company stock directly.  They suggest that it is more likely that Hirata purchased his shares through an employee stock option plan, which is not an ERISA pension plan, or that other shareholders (Ida and Matsunaga) gifted the shares to Hirata in recognition of his service.

## DISCUSSION

**I.    Motion to Dismiss Standard**

>      Fed.R.Civ.P. 12(b)(6) permits dismissal of a complaint that fails "to state a claim upon which relief can be granted."  "A Rule 12(b)(6) 'dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'"  Zamani v. Carnes, 491 F.3d 990, 996-97 (9th Cir. 2007) (quoting Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)) (brackets omitted).
>
>      Under the rule, review is generally limited to the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  Courts may also "consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir.

> 2003).  Documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss.  See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994).
>
> On a Fed. R. Civ. P. 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. See Sprewell, 266 F.3d at 988; Nat'l Ass'n for the Advancement of Psychoanalysis v. California Bd. of Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000); In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).  Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. Sprewell, 266 F.3d at 988.

Kapunakea Partners v. Equilon Enters. LLC, 679 F. Supp. 2d 1203, 1208 (D. Hawai`i 2009).

**II. ERISA**

Plaintiff brings her claims pursuant to 29 U.S.C. § 1132(a), which provides, in pertinent part:

> A civil action may be brought--
>
> (1) by a participant or beneficiary--
>
>> (A) for the relief provided for in subsection (c) of this section, or
>>
>> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

>     (2) by the Secretary, or by a participant,
>     beneficiary or fiduciary for appropriate relief
>     under section 1109 of this title;
>
>     (3) by a participant, beneficiary, or fiduciary
>     (A) to enjoin any act or practice which violates
>     any provision of this subchapter or the terms of
>     the plan, or (B) to obtain other appropriate
>     equitable relief (i) to redress such violations or
>     (ii) to enforce any provisions of this subchapter
>     or the terms of the plan[.]

### A.     Stock Valuation Claim

Count I alleges a violation of 29 U.S.C. § 1132(c)(1)(B).  Section 1132(c)(1) states:

>     Any administrator (A) who fails to meet the
>     requirements of paragraph (1) or (4) of section
>     1166 of this title, section 1021(e)(1) of this
>     title or section 1021(f), or section 1025(a) of
>     this title with respect to a participant or
>     beneficiary, or (B) who fails or refuses to comply
>     with a request for any information which such
>     administrator is required by this subchapter to
>     furnish to a participant or beneficiary (unless
>     such failure or refusal results from matters
>     reasonably beyond the control of the
>     administrator) by mailing the material requested
>     to the last known address of the requesting
>     participant or beneficiary within 30 days after
>     such request may in the court's discretion be
>     personally liable to such participant or
>     beneficiary in the amount of up to $100 a day from
>     the date of such failure or refusal, and the court
>     may in its discretion order such other relief as
>     it deems proper. . . .

Plaintiff alleges that Hirata owned his UWI shares pursuant to an ESOP.  [Complaint at ¶ 16 ("UWI, as part of its ERISA benefits package, made [Hirata] entitled to five percent (5%) ownership in UWI company stock.").]  Defendants argue that Plaintiff has not pled sufficient facts to establish that he

12

owned his stock pursuant to an ESOP.

> An ESOP is a type of ERISA plan "designed to invest primarily in" the stock of the employer who created it. [29 U.S.C.] § 1107(d)(6)(A). "Congress expressly intended that the ESOP would be both an employee retirement benefit plan and a technique of corporate finance that would encourage employee ownership." Edgar v. Avaya, Inc., 503 F.3d 340, 346 (3d Cir. 2007) (quotation omitted).

Johnson v. Couturier, 572 F.3d 1067, 1076 (9th Cir. 2009). Defendants argue that the fact that Hirata actually owned the shares indicates that the shares were part of some other arrangement not governed by ERISA. Generally, in an ESOP, the benefit plan invests in the employer's stock and employees participate in the plan; the individual employees themselves do not hold the stock. See e.g., Dann v. Lincoln Nat'l Corp., -- F. Supp. 2d --, Civil Action No. 08-5740, 2010 WL 1644276, at *5 (E.D. Pa. Apr. 20, 2010) ("Each of the Plans at issue contains a formally designated ESOP portion that is designed to invest primarily in employer securities." (citing Employees' Plan § 2; Agents' Plan § 2; Delaware Plan § 2 (The ESOP component is "the portion of the Plan invested in the LNC Common Stock Fund.")) (some citations omitted)).

The Complaint merely alleges that Hirata's stock ownership was part of his ERISA benefits package. Plaintiff's allegation that Hirata's stock ownership was part of a plan governed by ERISA is a legal conclusion disguised as a factual

allegation. Plaintiff has not alleged any other facts supporting this claim, and Hirata's direct ownership of the stock contradicts Plaintiff's claim that the stock ownership was part of an ESOP. Therefore, in considering Defendants' Motion to Dismiss, this Court is not required to accept this allegation as true. See Papasan v. Allain, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (citations omitted)).

The Complaint does not allege sufficient facts to establish that Hirata owned his UWI stock as part of an ERISA-governed ESOP. If Plaintiff was not a participant in an ERISA-governed ESOP, Defendants' alleged failure to provide a timely valuation of Hirata's stock upon request did not violate § 1132(c)(1)(B). This Court therefore CONCLUDES that Count I fails to state an actionable claim under ERISA and GRANTS Defendants' Motion as to Count I.

    B.    **Policy Cancellation Claim**

Count II alleges a violation of 29 U.S.C. § 1109(a), which states:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan

>       any profits of such fiduciary which have been made
>       through use of assets of the plan by the
>       fiduciary, and shall be subject to such other
>       equitable or remedial relief as the court may deem
>       appropriate, including removal of such fiduciary.
>       A fiduciary may also be removed for a violation of
>       section 1111 of this title.

It is undisputed that an employer has the right to terminate an ERISA-governed benefit plan.  See Peralta v. Hispanic Business, Inc., 419 F.3d 1064, 1070 (9th Cir. 2005). The plan administrator, however, has a fiduciary duty under ERISA to provide the employees with timely notice of the termination of benefits.  See id. at 1071-72 (holding that notification of the cancellation of the company's long-term disability insurance plan three months after the cancellation was untimely).  Peralta also addresses when a plaintiff in an ERISA action can seek individual relief, as opposed to relief on behalf of the plan.

Peralta, like Plaintiff in the instant case, sought monetary relief from the employer equal to the benefits that would have been available if the plan had not been cancelled. The Ninth Circuit noted that "[o]nly § 1132(a)(3) might permit such a recovery."  Id. at 1073.  The Ninth Circuit, however, noted that the United States Supreme Court has rejected attempts to use injunctive relief and restitution as equitable means to secure a monetary award in an ERISA action.  See id. at 1075 (citing Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002)).  ERISA permits equitable claims seeking to

prevent future losses, but does not permit the recovery of past due sums. See id. (citing Great-West, 534 U.S. at 211-12). In spite of this general rule, the Ninth Circuit noted that:

> Individual substantive relief under ERISA is available where an employer actively and deliberately misleads its employees to their detriment. In such cases, wrongs will be undone and means found to make benefits available, as in Varity, Blau and Hozier.[3] **Even where benefits are not available under the applicable plan, "appropriate" equitable relief may be awarded.** See, e.g., Varity, 516 U.S. at 515, 116 S.Ct. 1065. Here, however, there is no evidence of such egregious behavior. Despite the lack of clarity regarding the original reason for cancellation, and HBI's policy of promptly notifying its employees in advance of benefit changes, there is no evidence of a scheme either to hide the fact of cancellation or to affirmatively misrepresent the

---

[3] In Varity Corp. v. Howe, 516 U.S. 489 (1996), as part of a reorganization intended to eliminate Varity's poorly performing divisions and eradicate various debts, Varity intentionally misrepresented the financial stability of a newly formed company to induce employees of its failing divisions to accept employment by the newly formed company, as well as the benefit plan provided by the new company. Variety represented that the employees' benefits would remain secure if they voluntarily transferred to the new company. The new company, however, was insolvent from its inception. See 516 U.S. at 492-94.

In Blau v. Del Monte Corp., 748 F.2d 1348 (9th Cir. 1984), *abrogation on other grounds recognized by* Dytrt v. Mountain State Tel. & Tel. Co., 921 F.2d 889, 894 n.4 (9th Cir. 1990), the employer kept its written severance policy secret from its employees and also imposed several heightened standards that were not required by the written policy. Further, the policy did not provide for any claims procedure. See Blau, 748 F.2d at 1353-55.

In Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155 (3d Cir. 1990), the plaintiffs contended that the defendants orally amended the company's severance plan in order to deny the plaintiffs additional benefits. The Third Circuit held that, because the purported amendment was not reduced to writing before the plaintiffs' termination, the unamended plan governed their claim for benefits. See 908 F.2d at 1163.

> facts.  The uncontroverted evidence is that the HR manager, upon learning of the earlier cancellation, gave immediate notice of the cancellation to HBI employees.  There was no evidence of any intentional misleading or trickery, or of any active concealment, as in Blau.  The evidence is simply of negligently inadequate communications about a policy cancellation.  While the effect on Peralta may be the same, whether the cause is deceit or merely a breakdown in the channels of communication, the culpability is not.  Equity often involves the weighing of wrongdoing as well as of harm.  Here, the wrongful conduct did not even approach the upper end of the scale.

Id. at 1075-76 (emphasis added).

In the present case, the facts alleged in the Complaint, which this Court accepts as true for purposes of the instant Motion, go far beyond merely negligent failure to timely notify Hirata about the cancellation of the Policy.  The Complaint sufficiently alleges that Defendants actively and deliberately misled Hirata and Yoneshige to their detriment.  Thus, under Peralta, Plaintiff has alleged a legally cognizable claim for individual relief under ERISA.

Defendants, however, argue that this Court must still dismiss Count II because none of the relief that Plaintiff seeks is available under ERISA.  Count II, which Plaintiff brings pursuant to § 1132(a)(2) and (3), alleges that Plaintiff suffered "economic damages in an amount of $150,000.00."  [Complaint at ¶ 58.]  In the Complaint's prayer for relief, Plaintiff requests "'appropriate remedial' damages in the amount of $150,000

17

pursuant to Count II[.]" [Id. at pg. 9.]  Neither § 1132(a)(2) nor § 1132(a)(3) allow a civil action to recover economic damages to an individual participant or beneficiary.  Defendants' Motion is therefore GRANTED as to Plaintiff's request for damages associated with Count II.

The prayer for relief also seeks "'appropriate equitable' relief against Defendants in the form of restitution, specific performance, and/or the imposition of a constructive trust in the amount of $150,000[.]"  [Id.]  As noted, *supra*, restitution cannot be used as an equitable means to secure a monetary award.  See Peralta, 419 F.3d at 1075 (citing Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002)).  Defendants' Motion is therefore GRANTED as to Plaintiff's request for restitution.

Further, specific performance reinstating Hirata to the Policy is not possible in this case because the Policy no longer exists.  Under the facts alleged, a constructive trust also is not warranted because the Complaint does not identify any assets in Defendants' possession that rightfully belong to Plaintiff.  See, e.g., Johnson v. Couturier, 572 F.3d 1067, 1084 (9th Cir. 2009) ("the district court has jurisdiction under ERISA to impose a constructive trust over any assets in Defendants' possession it concludes rightfully belong to the ESOP" (citations omitted)).

Defendants argue that the Court should dismiss Count II

18

unless Plaintiff can identify what specific equitable relief, available under ERISA, that Plaintiff seeks.  Defendants believe that Plaintiff cannot identify any specific form of available equitable relief.  Plaintiff appears to concede that it cannot do so at this time.  Plaintiff, however, believes that it will be able to do so after conducting discovery.

Count II alleges a legally cognizable claim, as well as factual allegations supporting that claim.  Under notice pleading, a complaint must include "a demand for the relief sought, which may include relief in the alternative or different types of relief."  Fed. R. Civ. P. 8(a)(3).  Defendants have not identified any legal authority subjecting ERISA cases to heightened pleading rules.  In this Court's view, dismissing Count II on the ground that no appropriate equitable relief is available would require a finding that there is no possible set of facts under which the Court could fashion equitable relief under ERISA.  The Court is not willing to make such a finding at this time.

This Court CONCLUDES that Plaintiff is not required to identify in the Complaint the specific form of equitable relief sought, and that Plaintiff's general prayer for "appropriate equitable relief" is sufficient to withstand a motion to dismiss.  Defendants' Motion is therefore DENIED as to Plaintiff's request for "appropriate equitable relief".

## CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss Complaint, filed April 5, 2010, is HEREBY GRANTED IN PART AND DENIED IN PART.  Specifically, Defendants' Motion is GRANTED as to Count I, and GRANTED IN PART AND DENIED IN PART as to Count II.  Count I is DISMISSED WITHOUT PREJUDICE.  Count II is DISMISSED WITH PREJUDICE as to Plaintiff's claim for monetary damages and Plaintiff's claim for restitution.  Count II is DISMISSED WITHOUT PREJUDICE as to Plaintiff's claim for specific performance and constructive trust.  Defendants' Motion is DENIED as to Count II's general prayer for appropriate equitable relief.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 28, 2010.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**ESTATE OF RODNEY HIRATA V. JOHN J. IDA; CIVIL NO 10-00084 LEK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS COMPLAINT**