IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ESTATE OF RODNEY HIRATA, | ) | CIVIL NO 10-00084 LEK |
| AUDREY YONESHIGE, TRUSTEE AND | ) | |
| BENEFICIARY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN J. IDA, IN HIS | ) | |
| INDIVIDUAL AND OFFICIAL | ) | |
| CAPACITIES, ET AL., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On February 29, 2012, Defendants John J. Ida, in his

individual and official capacities, Lorrin T. Matsunaga, in his

individual and official capacities, and Urban Works, Inc. ("UWI")

(collectively "Defendants") filed their Motion for Summary

Judgment ("Motion"). [Dkt. no. 81.] Plaintiff Estate of Rodney

Hirata, Audrey Yoneshige, Trustee and Beneficiary ("Plaintiff")

filed its memorandum in opposition on April 27, 2012, and

Defendants filed their reply on May 4, 2012.[1] [Dkt. nos. 97,

102.] On May 17, 2012, Plaintiff filed Uncited Authorities in

Opposition to Defendants' Motion for Summary Judgment Filed

February 29, 2012. [Dkt. no. 113.] This matter came on for

---

[1] Defendants filed an Errata to their Reply on May 7, 2012.
[Dkt. no. 104.]

hearing on May 21, 2012.  Appearing on behalf of Defendants were

Keith Hiraoka, Esq., and Lois Yamaguchi, Esq., and appearing on

behalf of Plaintiff was Clayton Kimoto, Esq.  On June 27, 2012,

this Court issued an entering order directing the parties to file

supplemental memoranda addressing the issue of standing.  [Dkt.

no. 141.]  Plaintiff filed its supplemental memorandum on

July 12, 2012, and Defendants filed their supplemental memorandum

on July 27, 2012.  [Dkt. nos. 159, 169.]  After careful

consideration of the Motion, supporting and opposing memoranda,

and the arguments of counsel, Defendants' Motion is HEREBY

GRANTED IN PART AND DENIED IN PART for the reasons set forth

below.

## BACKGROUND

Plaintiff filed the instant Employee Retirement Income

Security Act ("ERISA") action on February 19, 2010.  The relevant

allegations of the Complaint are set forth in this Court's Order

Granting in Part and Denying in Part Defendants' Motion to

Dismiss Complaint ("Dismissal Order"):

> Rodney Hirata was a UWI employee from July 1, 1985
> until his death on December 19, 2007.  He became a
> senior associate on July 28, 1988.  [Complaint at
> ¶ 15.]  Hirata and Audrey Yoneshige began dating
> on May 6, 1989, and attended UWI functions
> together over the years.  Yoneshige was known as
> Hirata's companion and/or significant other.  They
> were married on July 7, 2006.  [Id. at
> [¶¶] 11-14.]  John Ida and Lorrin Matsunaga are,
> and were at all relevant times, UWI's president
> and vice president, respectively.  The Complaint
> alleges that they are the administrators for the

alleged ERISA plans at issue in this case. [Id. at ¶¶ 7-8.]

The January 1991 UWI General Employment Policy Manual ("Manual") refers to group life insurance provided by General American Life Insurance Company ("Policy"). The Policy states that the death benefit was three times the employee's annual salary, up to $150,000. The Complaint also alleges that, as part of UWI's ERISA benefits package, Hirata was entitled to five percent ownership in UWI's stock. Hirata had the Manual and the Policy in his possession up to his death. [Id. at ¶¶ 16-17.] The instant case arises from UWI's failure to inform Hirata of the cancellation of the Policy in 2001 and its failure to provide a timely valuation of Hirata's stock shares upon Yoneshige's request after Hirata's death.

Hirata was diagnosed with cancer on August 29, 2007. The next day, Yoneshige informed Ida of Hirata's diagnosis. On September 12, 2007, an oncologist informed Hirata that his condition was terminal and that he had a remaining lifespan of one to two years. [Id. at ¶¶ 18-20.]

## I. Policy Cancellation

According to the Complaint, from September 2007 to December 2007, Yoneshige went to UWI four times and spoke with Ida. Hirata had numerous doctors' appointments during that period. Ida was updated about Hirata's health status each time Ida called to inquire about the appointments. Ida did not mention the cancellation of the Policy during any of these conversations. [Id. at ¶¶ 24-29.]

On December 17, 2007, Hirata and Yoneshige met with Matsunaga in Hirata's hospital room. Prior to that meeting, Hirata and Yoneshige learned that Hirata's status at the hospital was going to be changed from acute to hospice and that Hirata's medical insurance would not cover the expenses of hospice care. Hirata and Yoneshige suggested to Matsunaga that the Policy benefits be used to pay for those expenses. Matsunaga agreed with the idea and said he would talk to Ida about

it. The next day, Yoneshige called UWI and discussed Hirata's up-coming status change with Matsunaga. In addition, Matsunaga and Ida visited Hirata at the hospital at different times, but neither mentioned the cancellation of the Policy. Hirata passed away on December 19, 2007. [<u>Id.</u> at ¶¶ 30-33.]

On February 14, 2008, Ida called a meeting with Yoneshige at UWI. Also present were Matsunaga and Kathy Hood, UWI's office manager. At the meeting, UWI presented information about the following: an HMSA life insurance policy, which Hirata did not know about; Hirata's stock shares; and Hirata's 401K account. No one

mentioned the cancellation of the Policy. [<u>Id.</u> at ¶¶ 34-36.]

On February 22, 2008, Yoneshige called UWI, and Hood informed her that Ida had lapsed the Policy. This was the first time that Yoneshige learned that the Policy had lapsed. She told Hood to inform Ida that Hirata thought he always had the Policy. Yoneshige did not receive any further information from Ida about the lapsing of the Policy. On February 25, 2008, Yoneshige spoke with a representative of Met Life, the successor to General American Life. Yoneshige learned that the Policy, which was effective May 1, 1990, was cancelled on February 28, 2001. She also learned that the Policy contained a conversion option, which would have allowed Hirata to continue the Policy after UWI cancelled it. [<u>Id.</u> at ¶¶ 37-40.]

After speaking with Met Life, Yoneshige called Matsunaga and confronted him about the cancellation of the Policy. Although he initially claimed that Hirata knew the Policy had been cancelled, Matsunaga later admitted that he, like Hirata, did not know the Policy had been cancelled. According to the Complaint, Matsunaga admitted that, as a UWI principal, he should have known about the cancellation, and he took full responsibility for Hirata's ignorance of the cancellation. [<u>Id.</u> at ¶¶ 37-41.]

The Complaint states that Hirata never knew the Policy had been cancelled and that he valued the Policy. The Complaint alleges that, if he had been aware of the cancellation, he would have exercised the conversion option. [<u>Id.</u> at ¶¶ 51-52.] At a May 6, 2008 meeting involving Yoneshige, her attorney-Clayton Kimoto, Esq., Ida, Matsunaga, and counsel for UWI-Frank Goto, Esq., it was confirmed that no letter which was sent to Hirata to inform him of the Policy's cancellation existed. [<u>Id.</u> at ¶ 42.] UWI produced an April 28, 2008 letter from John Khil, Esq., opining that, under the circumstances, UWI was not required to pay any benefits under the Policy to Hirata's beneficiaries. [Exh. 2 to the Complaint.]

<u>Estate of Hirata v. Ida</u>, Civil No. 10-00084 LEK, 2010 WL 2179812, at *1-2 (D. Hawai`i May 28, 2010) (footnote omitted).

The Complaint alleged the following claims: violation of ERISA, 29 U.S.C. § 1132(c)(1)(B), actionable pursuant to § 1132(a)(1)(A), based on Defendants' failure to provide Yoneshige with information about the value of Hirata's stock in UWI ("Count I"); [Complaint at ¶¶ 53-55;] and violation of ERISA, 29 U.S.C. § 1109(a)(1), actionable pursuant to § 1132(a)(2) and (3), based on Defendants' failure to notify either Hirata or Yoneshige of the cancellation of the Policy ("Count II") [<u>id.</u> at ¶¶ 56-58].

The Complaint prayed for the following relief: for Count I, that the Court fine Defendants $54,000 and award that amount to Plaintiff; for Count II, either remedial damages of $150,000 or appropriate equitable relief in the form of restitution, specific performance, and/or a constructive trust in

the amount of $150,000; attorneys' fees and costs; prejudgment interest; and all other appropriate relief. [Id. at pg. 9.]

In the Dismissal Order, this Court: dismissed Count I without prejudice; dismissed Count II with prejudice as to Plaintiff's claim for monetary damages and Plaintiff's claim for restitution; dismissed Count II without prejudice as to Plaintiff's claim for specific performance and constructive trust; and denied Defendants' motion to dismiss as to Count II's general prayer for appropriate equitable relief. 2010 WL 2179812, at *9. Plaintiff, however, did not file a timely amended complaint.[2] Thus, the only remaining claim in this action is Plaintiff's claim for appropriate equitable relief based on Count II.

I. **Defendants' Motion**

In the instant Motion, Defendants point out that, on May 2, 2011, Yoneshige's probate attorneys filed the following documents in the State of Hawai`i, First Circuit Court ("the Probate Court"): Informal Probate Information Sheet; Application for Informal Probate of Will and for Informal Appointment of Personal Representative; and Acceptance of Appointment by

---

[2] On January 25, 2012, Plaintiff filed a motion for leave to file an amended complaint to restate a claim based on stock valuation. [Dkt. no. 76.] The magistrate judge issued an order denying the motion on March 7, 2012. [Dkt. no. 86.] Plaintiff filed a motion for reconsideration on March 21, 2012, and the magistrate judge denied the motion on May 7, 2012. [Dkt. nos. 87, 105.]

Audrey R. Yoneshige. [Defs.' Separate Concise Statement of Facts in Supp. of Motion, filed 2/29/12 (dkt. no. 82) ("Defs.' CSOF"), Decl. of Lois H. Yamaguchi ("Yamaguchi Decl."), Exhs. A-C.[3]] On May 3, 2011, the Probate Court informally appointed Yoneshige as the Personal Representative of Hirata's estate ("the Estate") and issued Letters Testamentary. [Id., Exh. D (Statement of Informal Probate of Will and of Informal Appointment of Personal Representative), Exh. E (Letters Testamentary).] Yoneshige filed a Proof of Service of Personal Representative's Written Information to Interested Persons in the Probate Court on July 8, 2011. [Id., Exh. F.]

Defendants argue that, at the time this action was filed on February 19, 2010, no personal representative or special administrator had been appointed for Hirata's Estate. Yoneshige did not obtain the legal authority to file a civil action on behalf of Hirata's Estate until May 3, 2011. Defendants argue that this Court must dismiss the remaining claim in this case because the Complaint was not filed by a duly appointed personal representative or special administrator. Further, Plaintiff cannot re-file the claim because the statute of limitations has

_____

[3] Defendants filed an Errata to their CSOF on March 1, 2012. [Dkt. no. 83.] The Errata only contains Defendants' statements of fact. The original CSOF contains all of the supporting documents. Thus, all of the Court's citations to Defendants' statements of fact refer to docket number 83, and all of the Court's citations to the supporting documents refer to docket number 82.

already run and the statute of limitations applicable to an estate's personal injury claim is not tolled while the appointment of the estate's personal representative is pending. [Mem. in Supp. of Motion at 5-7.]

Defendants note that the statute of limitations applicable to an ERISA breach of fiduciary duty claim is three years after the plaintiff acquires actual knowledge of the breach or violation. [Id. at 8 (citing 29 U.S.C. § 1113(2)).] According to the Complaint, Plaintiff learned of the cancellation of the Policy on February 22, 2008. [Id. (citing Complaint at ¶¶ 37, 38).] Thus, the statute of limitations ran before the Probate Court appointed Plaintiff as the personal representative of Hirata's Estate. [Id. at 9.] Further, Defendants argue that Plaintiff has no evidence to support its claim that Defendants' failure to timely notify Hirata or Yoneshige of the cancellation of the Policy was deliberate or in bad faith. Defendants contend it was merely an oversight. [Id. at 8 n.6.] Ida states in his declaration that he decided to cancel UWI's General American group life insurance policy "as a cost-cutting measure[.]" [Defs.' CSOF, Decl. of John J. Ida ("Ida Decl.") at ¶ 5.] Ida does not recall whether he notified qualifying UWI employees about the cancellation, but he asserts that, if he did not provide notice, there was nothing "untoward" or in bad faith, and there was no intent to deceive or otherwise withhold information

from anyone. [Id.] Defendants therefore argue that they are entitled to summary judgment on Plaintiff's remaining claim. [Mem. in Supp. of Motion at 9.]

In addition, Defendants point out that the Rodney O. Hirata Living Trust ("the Trust") was created on October 24, 2007. [Yamaguchi Decl., Exhs. G-1, G-2 (trust instruments).] Thus, the Trust was not created until more than six years after the cancellation of the Policy, and Defendants argue that they could not have owed the Trust any duty regarding the Policy. [Mem. in Supp. of Motion at 10.] Further, UWI was the policyholder and owner of the Policy, which stated that UWI could change or end the Policy without the consent of, and without giving notice to, the Policy beneficiaries. [Ida Decl. at ¶ 4, Exh. H (the Policy) at UW000001, UW000024.] Thus, Defendants argue that Hirata had no ownership interest in the Policy and could not have transferred any interest in the Policy to the Trust. Defendants emphasize that there is no evidence that Hirata ever attempted to make the Policy a part of the Trust. Defendants argue that neither the Trust, Yoneshige as Trustee, nor Yoneshige as Trust Beneficiary, ever acquired a legally protectable interest in the Policy. Defendants urge the Court to grant them summary judgment because Plaintiff has no legally cognizable § 1109(a) claim for breach of fiduciary duty. [Mem. in Supp. of Motion at 10.]

Defendants also argue that they are entitled to summary judgment because Plaintiff cannot prove that there is any legally cognizable equitable relief that it is entitled to. Defendants argue that, in the two years that have passed since this Court issued its Dismissal Order, Plaintiff is no closer to identifying what equitable relief it is entitled to. Section 1109(a) provides that the remedy for a breach of fiduciary duty is requiring the fiduciary to restore any losses to the plan or any profits that the fiduciary made through the use of the plan's assets. Defendants argue that they did not cause any losses to the Policy. Further, they did not profit from the use of the Policy's assets. [Id. at 11-12.] UWI paid all of the Policy's premiums to General American Life Insurance Company. Thus, no UWI fiduciary could have used the premiums. No UWI employee paid any premiums, and no UWI employee incurred out-of-pocket losses as a result of the cancellation of the Policy. [Ida Decl. at ¶¶ 4, 6, Exh. H at UW000016, UW000021.] Defendants therefore argue that Plaintiff has not presented any evidence that Defendants benefitted from the cancellation of the Policy or from any failure to timely notify Hirata of the cancellation. Defendants also contend that 29 U.S.C. § 1132(a)(3) does not authorize the payment of life insurance proceeds which a plaintiff claims would have been paid but for the alleged breach of fiduciary duty. [Mem. in Supp. of Motion at 12-13.]

Finally, Defendants emphasize that Plaintiff has no evidence of deliberate deception, bad faith, or intent to harm. They argue that the Ninth Circuit has recognized that it is Congress's responsibility to provide a remedy for such negligent administration. Plaintiff has no statutory remedy, and Defendants are entitled to summary judgment on Plaintiff's sole remaining claim. Defendants urge the Court to grant the Motion and to direct the entry of judgment terminating the action with prejudice. [Id. at 13-14.]

## II. Plaintiff's Opposition

In her declaration, Yoneshige states that, on September 13, 2007, she and Hirata met with an estate planning attorney, and Hirata reported the Policy as one of his UWI benefits. On December 17, 2007, she and Hirata suggested to Matsunaga that the Policy be used to pay for Hirata's hospitalization and medical care. Matsunaga said that was a good idea and he would talk to Ida about it. Hirata died on December 19, 2007. [Pltf.'s Concise Statement of Facts in Supp. of Mem. in Opp., filed 4/27/12 (dkt. no. 98) ("Pltf.'s CSOF"), Decl. of Audrey Yoneshige ("Yoneshige Decl.") at ¶¶ 6-8.[4]]

Yoneshige also states in her declaration that she met

---

[4] Plaintiff filed an Errata to Plaintiff's CSOF on May 17, 2012, and a Second Errata to Plaintiff's CSOF on May 21, 2012. [Dkt. nos. 112, 119.]

with Ida, Matsunaga, and Kathy Wood, on February 14, 2008, but no one mentioned the cancellation of the Policy. On February 22, 2008, Wood informed Yoneshige that Ida had lapsed the Policy. [Id. at ¶¶ 9-10.] When Yoneshige called UWI on February 25, 2008, Matsunaga first claimed that Hirata knew about the cancellation of the Policy. Yoneshige reminded Matsunaga about the December 17, 2007 conversation regarding using the Policy for medical expenses. Matsunaga then admitted that he should have known what was going on in UWI, and he took full responsibility for the fact that Hirata did not know the Policy had been cancelled. [Id. at ¶ 13.]

In its memorandum in opposition, Plaintiff first argues that the Motion is premature because Defendants filed the Motion months before the June 1, 2012 discovery deadline. [Mem. in Opp. at 5-6.] Plaintiff also urges the Court to reject Defendants' argument that the three-year statute of limitations in § 1113(2) applies. Plaintiff contends that the six-year statute of limitations in § 1113(1)(A) and (B) applies. In the alternative, § 1113(2) provides for a six-year statute of limitations in cases of fraud or fraudulent concealment. Plaintiff agues that the six-year limitations period expires in 2014 and, therefore, its action is timely. [Id. at 7-10.]

Plaintiff points out that no where in Defendants' CSOF do they state that they informed Hirata of the cancellation of

the Policy.  As a result of Defendants' concealment, Yoneshige

did not discover the cancellation of the Policy until

February 22, 2008.  Plaintiff argues that Defendants' concealment

triggers the six-year statute of limitations, and its Complaint

was timely.  [Id. at 10-11.]  Although Yoneshige was not

appointed as the Estate's personal representative at the time

Plaintiff filed the Complaint, Plaintiff argues that other courts

have continued a defendant's motion for summary judgment to allow

the widow plaintiff time to secure her appointment as the

personal representative of her husband's estate.  Since the Court

has the discretion to continue the Motion to allow Plaintiff to

secure standing, and Yoneshige has in fact secured her

appointment as the personal representative of Hirata's Estate,

the Court would abuse its discretion if it granted the Motion

based on Yoneshige's failure to secure her appointment before

filing the Complaint.  In the alternative, Plaintiff argues that

the Court can rule that Yoneshige's appointment relates back to

its timely filing of the Complaint.  [Id. at 13-15.]

　　　　Plaintiff's memorandum in opposition states that, in

reliance on UWI's benefits in addition to his salary, Hirata did

not seek jobs as an architect with other companies and he "lost

out on a significant raise in salary as well as additional

benefits."  [Id. at 13.]  Plaintiff's CSOF, however, does not

include any evidence supporting this statement.

13

Plaintiff argues that UWI was acting as an ERISA fiduciary when it significantly and deliberately misled Hirata. Plaintiff argues that misleading Hirata about the Policy's cancellation violated UWI's fiduciary duties under 29 U.S.C. § 1104. In <u>Varity Corp. v. Howe</u>, 516 U.S. 489 (1996), the United States Supreme Court recognized that ERISA's duties require a plan administrator to follow rules which may exceed what the insurance contract requires. Further, knowingly and significantly deceiving plan beneficiaries to save the employer money at the employees' expense is not acting solely in the interests of the participants and beneficiaries, and individual equitable relief is available under § 1132(a)(3). Plaintiff also argues that appropriate equitable relief may be available in a case, even though benefits are not available under the plan at issue and individual benefits are not available under ERISA. Further, relief is available where the employer actively and/or deliberately misleads employees to their detriment. [<u>Id.</u> at 16-19.] Plaintiff emphasizes that the Dismissal Order ruled that § 1132(a)(3) authorizes actions for individual equitable relief for breach of fiduciary duty. Plaintiff states that the specific equitable remedy it is seeking is an "accounting for profits". [<u>Id.</u> at 20.]

Plaintiff argues that Defendants did benefit from the cancellation of the Policy: UWI benefitted from eliminating the

costs of the premiums; by failing to inform Hirata, Defendants avoided the costs that would have been associated with any legal action Hirata may have filed; and Hirata remained as a UWI employee in reliance on his benefits, including the Policy. Plaintiff asserts that "the difference in both salary and benefits need to be ascertained via an accounting for profits." [Id. at 21.]

Finally, Plaintiff contends that there are genuine issues of material fact for trial regarding the applicable statute of limitations. In other words, the jury must determine whether Defendants engaged in conduct which would trigger the six-year statute of limitations instead of the three-year statute of limitations. [Id. at 21-23.] Plaintiff therefore urges the Court to deny the Motion. [Id. at 24.]

**III. Defendants' Reply**

In their Reply, Defendants first argue that the Motion is not premature because they filed it on the dispositive motions deadline. Further, Plaintiff has not shown in Yoneshige's declaration that Plaintiff is entitled to further time to respond to the Motion cannot present facts essential to oppose the Motion. [Reply at 1 (citing Fed. R. Civ. P. 56(d)).]

As to the statute of limitations issue, Defendants argue that Plaintiff must have clear and convincing evidence of

15

specific, affirmative acts of fraud or concealment to trigger the § 1113(2) exception. Defendants argue that, to invoke the exception, Plaintiff must establish the elements of a fraudulent concealment claim under Hawai`i law. [Id. at 1-2.]

Defendants argue that the evidence which Plaintiff has presented does not establish that Defendants engaged in specific, affirmative acts of fraud or concealment. Further, even if Plaintiff has established such acts, Hirata did not detrimentally rely on them. Specifically, as to the conversation that Hirata, Yoneshige, and Matsunaga allegedly had about using the Policy to pay for Hirata's medical expenses, Defendants state that, under the circumstances in which the conversation occurred, there is no admissible evidence of fraud or concealment. [Id. at 3-5.] Defendants present Matsunaga's affidavit, which contests Yoneshige's account of that conversation. [Defs.' Further Separate Concise Statement of Facts Re: Reply, filed 5/4/12 (dkt. no. 103) ("Defs.' FCSOF"), Decl. of Lorrin T. Matsunaga ("Matsunaga Decl.") at ¶ 4.] He denies that Hirata raised anything to him, and he states that discussing insurance with Hirata at that time would have been inappropriate. He recalls Yoneshige mentioning an insurance policy, and he admits that he could have said "something like 'that is a good idea; I will discuss it with John[.]'" [Id.] Matsunaga states that he was emotional and upset because Yoneshige raised hospice care and

16

Matsunaga knew that day might be the last time he would see Hirata. [Id.] Matsunaga denies doing anything untoward or in bad faith and denies that he or any other UWI principal intended to withhold information or deceive anyone. [Id. at ¶ 5.] Thus, Defendants argue that, in the absence of evidence that Defendants committed fraudulent concealment, the three-year statute of limitations applies. [Reply at 5-6 & n.2.]

As to Yoneshige's failure to secure her appointment as personal representative prior to the filing this action, Defendants emphasize that Plaintiff was represented by counsel throughout this case and should not be absolved from complying with the requirements of Hawai`i law. Defendants also point out that Plaintiff did not dispute that neither the Trust, Yoneshige as trustee, nor Yoneshige as Trust beneficiary has standing because the Policy was never part of the Trust. [Id. at 6-8.]

Finally, Defendants reiterate that Plaintiff cannot prove that it is entitled to any legally cognizable equitable relief. Defendants emphasize that "appropriate equitable relief" under ERISA must be narrowly construed to be those forms of relief typically available in equitable actions, including injunctions, mandamus, and restitution. An accounting for profits is a form of equitable restitution, but it is usually invoked in conjunction with a constructive trust. What Plaintiff actually seeks is monetary damages based on personal liability

17

for benefits which Hirata could have collected if not for the cancellation of the Policy. This Court has already ruled that monetary damages are not available. Defendants therefore urge the Court to award summary judgment in their favor on the sole remaining claim and to direct the entry of judgment terminating the action with prejudice. [_Id._ at 9-13.]

## DISCUSSION

### I.  Standing

At the outset, the Court must address the threshold issue of whether Plaintiff has standing to pursue the instant action. The sole remaining claim in this case is the portion of Count II alleging a violation of 29 U.S.C. § 1109(a) and seeking other appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3).

Section 1132(a) states, in pertinent part:

A civil action may be brought–

. . . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

Thus, a plan participant, beneficiary, or fiduciary has standing to bring an action for equitable relief pursuant to § 1132(a)(3).

The Ninth Circuit has stated that, pursuant to United States Supreme Court case law and 29 U.S.C. § 1002(7), "a party is a 'participant' if he is an employee in, or reasonably expected to be in, currently covered employment, or if he is a former employee who has a reasonable expectation of returning to covered employment, or a 'colorable claim' to vested benefits." Miller v. Rite Aid Corp., 504 F.3d 1102, 1106 (9th Cir. 2007) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989)). In the case of a deceased employee, courts look at the time of the employee's death to determine whether he was a covered employee and whether he had a colorable claim to benefits. Id. at 1107. Similarly, courts look to the time of the employee's death to determine whether parties are the employee's beneficiaries for purposes of ERISA. Id. at 1108. Under this rule, neither Hirata's Estate, Yoneshige as trustee and beneficiary of the Trust, nor Yoneshige herself would have standing to pursue a § 1132(a)(3) claim. At the time of his death in 2007, Hirata was not a participant in the Policy because it no longer existed. [Ida Decl. at ¶ 5 (stating that he decided to cancel the Policy "as a cost-cutting measure" around "the early part of 2001").]

The Ninth Circuit, however, recognized that it had previously deviated from the time-of-suit rule in McBride v. PLM International Inc., 179 F.3d 737, 742-43 (9th Cir. 1999).

<u>Miller</u>, 504 F.3d at 1106 n.4.  In <u>McBride</u>, the Ninth Circuit stated:

> When an individual alleges, as here, that he was discharged in violation of ERISA's whistleblower provisions, his employer cannot be allowed to evade [29 U.S.C. §] 1140 accountability simply by terminating the plan and distributing the benefits.  Nothing in <u>Firestone</u>[, 489 U.S. 101,] commands such a result.  If an employee is a participant at the time of the alleged ERISA violation and alleges that he was discharged or discriminated against because of protected whistleblowing activities, we hold that such an employee has standing to sue under ERISA.  To require that the claimant be a participant at the time of filing suit would undermine the very purpose of ERISA's whistleblower provision: to provide a federal remedy for discrimination against plan participants for exercising their protected rights under ERISA. . . .

179 F.3d at 743 (some citations omitted).  In <u>Miller</u>, the Ninth Circuit suggested that it would be inclined to create a further exception to the standard rules if the employer "unlawfully single[d the employee] out in a way that undermined her ability to bring an ERISA claim, or [took] any other action designed to undermine the enforcement of ERISA."  504 F.3d at 1106-07 n.4. The Ninth Circuit, however, stated that it was not necessary to create such an exception in <u>Miller</u> because the employer had not engaged in such an unlawful act.  <u>Id.</u>

As this Court previously recognized in the Dismissal Order, although an employer has the right to terminate an ERISA-governed benefit plan, the plan administrator "has a fiduciary duty under ERISA to provide the employees with timely notice of

20

the termination of benefits." 2010 WL 2179812, at *7 (citing

Peralta v. Hispanic Bus., Inc., 419 F.3d 1064, 1070 (9th Cir.

2005)). Further, as recognized in the Dismissal Order, id.,

Peralta states that:

> Individual substantive relief under ERISA is
> available where an employer actively and
> deliberately misleads its employees to their
> detriment. In such cases, wrongs will be undone
> and means found to make benefits available, as in
> Varity [Corp. v. Howe, 516 U.S. 489 (1996)], [Blau
> v. Del Monte Corp., 748 F.2d 1348 (9th Cir.
> 1984),] and [Hozier v. Midwest Fasteners, Inc.,
> 908 F.2d 1155 (3d Cir. 1990)]. Even where
> benefits are not available under the applicable
> plan, "appropriate" equitable relief may be
> awarded. See, e.g., Varity, 516 U.S. at 515, 116
> S. Ct. 1065. . . .

419 F.3d at 1075 (footnote omitted).

Where, as here, the plaintiff alleges that the plan

administrator actively and deliberately misled the employee to

the employee's detriment by concealing the cancellation of the

plan until after the employee's death,[5] to require that the

employee be a participant at the time of his death would

undermine his beneficiaries' ability to bring an ERISA claim and

would undermine the enforcement of ERISA. See Miller, 504 F.3d

at 1107 n.4. Applying the time-of-death rule would allow the

plan administrator to escape liability under ERISA for the

---

[5] The Court will discuss, *infra* Section III, Defendants'
argument that they are entitled to summary judgment as to the
merits of Plaintiff's allegation that Defendants actively and
deliberately misled Hirata about the cancellation of the Policy
and the failure to provide timely notice of the cancellation.

failure to provide timely notice of the termination of benefits by concealing the cancellation until after an employee's death. This Court therefore CONCLUDES, based on <u>McBride</u>, <u>Miller</u>, and <u>Peralta</u>, that, where an plan administrator actively and deliberately misleads an employee by failing to provide timely notice of the cancellation of an ERISA-governed employee benefit plan, the employee has standing to sue under ERISA if the employee was a participant at the time of the plan's cancellation. Similarly, this Court CONCLUDES that the employee's estate or beneficiaries have standing to sue under ERISA if they were the employee's beneficiaries under the terms of the plan at the time of the plan's cancellation. <u>See</u> <u>Miller</u>, 504 F.3d at 1106-07 (holding that the question whether a deceased employee was a plan participant and the question whether the deceased employee's beneficiaries are beneficiaries for purposes of ERISA are determined at the same time, *i.e.* at the time of the employee's death). The Court notes that, in cases such as the instant case, the alleged ERISA violation is not the failure to ensure a particular benefit at the time of the employee's death, but the failure to provide timely notice of the cancellation of the benefit plan. <u>See</u> <u>McBride</u>, 179 F.3d at 743 ("If an employee is a participant **at the time of the alleged ERISA violation** and alleges that he was discharged or discriminated against because of protected whistle blowing activities, we hold that such an

employee has standing to sue under ERISA." (emphasis added)). Thus, the relevant time period is the time of the cancellation, not the time of the employee's death.

The parties do not dispute that Hirata was a participant in the Policy at the time Ida cancelled it. Thus, Plaintiff has standing to pursue its § 1132(a)(3) claim if Yoneshige, in one or more of the capacities in which she asserts, was Hirata's beneficiary under the Policy at the time of the Policy's cancellation. "The term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). An estate is included within ERISA's definition of a "person". 29 U.S.C. § 1002(9).

Plaintiff argues that Yoneshige herself has standing to pursue this action pursuant to the terms of the Policy. [Pltf.'s Suppl. Mem., Decl. of Clayton Kimoto ("Suppl. Kimoto Decl."), Exh. 1 (copy of UWI's Group Insurance Certificate for the General American Life Insurance Policy).] The Policy states, in pertinent part:

> "Beneficiary" means the person(s) you designate to receive your life insurance benefit. You can name or change your beneficiary at any time . . . . If you name more than one beneficiary, the plan will pay the benefit in equal shares unless you indicate otherwise.
>
> . . . .

> Unless you indicate otherwise, the plan will
> pay the benefit in the same proportion as was to
> be paid among your other beneficiaries.  If you do
> not name a beneficiary, or if no beneficiary
> survives you, the plan will pay the benefit in
> this order to:
>
> 1.    your spouse, if living;
> 2.    your surviving children, in equal shares;
> 3.    your parents, in equal shares, or to the
> survivor;
> 4.    your estate.

[Id. at 5-6.]  None of the parties have presented any evidence as

to whether Hirata designated a specific beneficiary.  Yoneshige

has admitted that she does not have any documentation which

demonstrates that Hirata named her as the Policy's beneficiary.

Further, she never discussed with Hirata who was his beneficiary

under the Policy.  [Defs.' Suppl. Mem., Exh. K (excerpts of

6/18/12 Yoneshige depo. trans. ("Yoneshige Depo.")) at 48.]

Defendants, however, have not presented any documentation or

other evidence of who or what entity, if any, Hirata named as his

beneficiary.

The Court does note that the Trust was created in 2007.

[Yamaguchi Decl., Exhs. G-1, G-2.]  Thus, the Trust could not

have been a beneficiary at the time of the Policy's cancellation.

This Court therefore CONCLUDES as a matter of law that Yoneshige

does not have standing to the bring the claim in this case in her

capacity as trustee and beneficiary of the Trust because

Plaintiff has not established that the Trust suffered an injury

in fact as a result of the alleged ERISA violation.  See, e.g.,

24

Paulsen v. CNF Inc., 559 F.3d 1061, 1072 (9th Cir. 2009) (noting that an ERISA plaintiff must establish the requirements of constitutional standing, including injury in fact (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992))).  The Court therefore GRANTS Defendants' Motion as to the claim on behalf of the Trust.

If Hirata did not designate a beneficiary, the Policy's succession of default beneficiaries would apply.  First in the Policy's succession is the participant's spouse.  Hirata and Yoneshige were in a serious relationship from 1989, and they became engaged in 2000, but they did not marry until 2006. [Yoneshige Depo. at 7-8.]  Thus, Yoneshige was not Hirata's spouse at the time of the Policy's cancellation.

Second in the succession is the participant's surviving children.  Hirata apparently did not have any children.  [Id. at 8 (stating that, when Hirata and Yoneshige got married, it was the first marriage for both of them and they did not have any children).]

Third in the succession is the participant's surviving parent or parents.  At the time of the Policy's cancellation, at least Hirata's mother was living.  [Id. at 98 (when Yoneshige inquired about the Policy in February 2008, Hirata's mother was living at the time); id. at 99 (Yoneshige never asked Hirata's mother if the mother was the beneficiary under the Policy).]

Thus, if Hirata had not designated a beneficiary under the Policy before the Policy's cancellation, Hirata's mother would have been the default beneficiary and Hirata's mother or her estate would have standing to sue for Defendants' alleged failure to provide timely notice of the Policy's cancellation.

As previously noted, there is evidence in the record that the Policy allowed Hirata to designate his beneficiary. Although Plaintiff has not presented evidence that either Yoneshige individually, or the Estate was Hirata's designated beneficiary, in deciding a motion for summary judgment, this Court must view the evidence in the light most favorable to the non-moving party. <u>Miller v. Glenn Miller Prods., Inc.</u>, 454 F.3d 975, 988 (9th Cir. 2006) (stating that, on a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor" (citations, quotation marks, and brackets omitted)). In light of the fact that an Estate can be a beneficiary under ERISA and under the Policy itself and, in light of the fact, when the Policy was cancelled in 2001, Yoneshige had been Hirata's significant other for more than ten years and his fiancee for approximately one year, this Court FINDS that there is a genuine issue of material fact as to whether either the Estate or Yoneshige individually was Hirata's named beneficiary. Thus,

Defendants are not entitled to judgment as a matter of law as to the Estate's standing and Yoneshige's standing individually.  <u>See</u> Fed. R. Civ. P. 56(a) (stating that a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").  Defendants may revisit the standing issue based on the evidence adduced at trial.

**II.   <u>Statute of Limitations</u>**

The Court now turns to Defendants' argument that Plaintiff's[6] claim is barred by the applicable statute of limitations.  ERISA's statute of limitation periods are set forth in 29 U.S.C. § 1113, which states:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>
> > (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> >
> > (2) three years after the earliest date on which the plaintiff had actual knowledge of

[6] Insofar as this Court has granted Defendants summary judgment as to the Trust's claims, all of the subsequent references to "Plaintiff" refer to Yoneshige in her capacity as personal representative of the Estate and in her individual capacity as a beneficiary of the Estate.

the breach or violation;

> except that in the case of fraud or concealment,
> such action may be commenced not later than six
> years after the date of discovery of such breach
> or violation.

Yoneshige learned about the cancellation of the Policy, and therefore that Defendants had failed to provide timely notice of the cancellation, on February 22, 2008. [Yoneshige Decl. at ¶ 10.] Thus, pursuant to § 1113(2), Plaintiff had three years from that date to file its action.

Yoneshige filed this action on February 19, 2010, in her capacity as trustee and beneficiary of the Trust and purportedly on behalf of Hirata's Estate as its personal representative and a beneficiary of the Estate. The Court, however, FINDS that Yoneshige did not have the authority to file civil actions on behalf of Hirata's Estate when Plaintiff filed the action because the Probate Court did not informally appoint her as the personal representative of the Estate and did not issue her Letters Testamentary until May 3, 2011. [Yamaguchi Decl., Exhs. D, E.]

If the three-year statute of limitations applies, Plaintiff's claim would have been time barred by the time Yoneshige acquired the authority to file suit on behalf of the Estate. The Court, however, concludes that Yoneshige's lack of authority at the time of the filing of the Complaint may not be fatal because, at the present time, she has the authority sue on

behalf of the Estate.  See In re Anderson, 847 F. Supp. 2d 1263,

1269-70 (W.D. Wash. 2012).  The district court in Anderson

focused on whether the plaintiff had the capacity to sue at the

time the court entered its dispositive order.

> As [46 U.S.C.] § 30104 states, only an injured
> seaman or his or her personal representatives has
> capacity under the Act to sue.  And, as
> Counter-Claimant concedes in her Opposition, she
> is not the decedent's personal representative.
> Nor has she made any attempt to undertake the
> steps necessary to be appointed the decedent's
> personal representative.  Accordingly, this Court
> has no choice but to conclude that she lacks the
> capacity to bring a Jones Act claim.  Graca [v.
> Rosebank Mar., Inc., No. 04-14302], 2005 WL
> 6458603, at *2 [(11th Cir. Mar. 8, 2005) (per
> curiam)] ("[W]hen the district court acted, Graca
> was not the personal representative of the estate.
> Because Graca lacked the capacity to sue when the
> district court entered its order, the order was
> not erroneous.");[7] Ivy [v. Sec. Barge Lines,

---

[7] In Graca, the decedent's brother filed a seaman's
complaint approximately one week before the expiration of the
statute of limitations.  The district court granted the plaintiff
an extension of time to respond to the defendants' motions to
dismiss, which questioned the plaintiff's capacity to sue as the
estate's personal representative.  In response to the defendants'
motion for reconsideration of the order granting the extension,
the plaintiff stated that pleadings seeking appointment as
personal representative had been prepared and should be filed
within ten days.  The plaintiff argued that, if he was appointed,
the appointment should relate back to the filing of his complaint
on behalf of the estate.  When the plaintiff failed to notify the
district court and the defendants that he had filed the action
seeking appointment, the district court dismissed the complaint
without prejudice for lack of capacity to sue.  Six days after
the dismissal, a probate court appointed the plaintiff as the
personal representative of his brother's estate.  The plaintiff
filed a Fed. R. Civ. P. 60(b) motion for relief from the order
dismissing the complaint, but the district court denied the
motion.  Graca, 2005 WL 6458603, at *1-2.  The Eleventh Circuit
                                              (continued...)

Inc.], 585 F.2d [732,] 734 [(5th Cir. 1978);[8]] see
also Kole v. Korean Air Lines Co., Ltd., [No.
95-15117, 1996 WL 436514], at *1 (9th Cir. [Aug.
2,] 1996) (memorandum) (concluding that the
district court erred in not granting summary
judgment to Korean Air on the ground that "Kole
lacked standing under DOHSA because he was not the
personal representative for his wife's
estate");[[9]] Alcabasa v. Korean Air Lines Co.,
Ltd., 62 F.3d 404, 407-08 (D.C. Cir. 1995)
(affirming the district court's grant of summary
judgment to the alleged "employer" on the grounds
that the widower "lacked standing to bring [his
DOHSA claim] because he was not the personal
representative of the deceased").[[10]]

-----

[7](...continued)
affirmed the order dismissing the complaint and the denial of the
motion for reconsideration of the dismissal. Id. at *3.

[8] In Ivy, the decedent's father initiated the seaman's
action as the decedent's personal representative, but the
appointment was revoked before trial. 585 F.2d at 734. The
Fifth Circuit held that the trial judge erred in deciding that
the plaintiff had the procedural capacity to bring the action.
The Fifth Circuit, however, stated that, "[b]ecause we are
remanding for a new trial on the basis of the other errors in the
original proceedings, the complaint may there be amended so that
the claim is asserted by the proper party; if this is not
promptly done, the trial court should dismiss the action." Id.
at 735 (footnote omitted).

[9] In Kole, the plaintiff, the decedent's husband, was not
the personal representative of his wife's estate. The decedent's
personal representative was her sister, and she filed a wrongful
death action in another district court. The decedent's husband
moved to intervene in that action, but the district court denied
his motion. The husband therefore filed his own action. 1996 WL
436514, at *1.

[10] In Alcabasa, the plaintiff was the decedent's husband but
he was not the decedent's personal representative because the
decedent's brother allegedly "secured his appointment as his
sister's personal representative by fraudulently denying Mr.
Alcabasa's existence to the New Jersey probate court." 62 F.3d
at 405, 407.

Id. (some citations omitted). Thus, summary judgment or dismissal is proper if, by the time the district enters a dispositive order, the plaintiff has not resolved, or cannot resolve, her lack of capacity to sue. It is also relevant whether the plaintiff resolved, or could resolve, the lack of capacity within the limitations period.

If any of the six-year limitations periods in § 1113 applies, Plaintiff could file a timely complaint at this time because less than six years have elapsed since February 22, 2008, the date Yoneshige learned of the alleged ERISA violation. This Court would, in its discretion, allow Plaintiff to file an amended complaint in this action rather than require Plaintiff to file a new action. See Fed. R. Civ. P. 15(a)(2) (stating that a court "should freely give leave when justice so requires").

First, the Court notes that the six-year limitations period applicable to § 1113(1)(A) and (B) do not apply because § 1113 states that the **earlier** of the limitations periods in subsections (1) and (2) applies. The three-year limitations period in subsection (2) began to run from February 22, 2008, and that statute of limitations period has expired. Arguably, Plaintiff's position is that the December 17, 2007 conversation that Yoneshige and Hirata had with Matsunaga about using the Policy to pay for Hirata's medical expenses was the last action in which Defendants actively and deliberately misled Hirata about

31

the existence of the Policy.  [Yoneshige Decl. at ¶ 7 (describing conversation).]  Defendants also arguably could have cured their failure to disclose the cancellation of the Policy to Hirata up to his death on December 19, 2007.  [Id. at ¶ 8 (stating date of death).]  Plaintiff could argue that the six-year limitations periods in § 1113(1)(A) and (B) began to run from those dates. Such arguments, however, would be unavailing because it is the **earlier** of the limitations periods in subsections (1) and (2) that applies.  The earlier of the limitations periods is the three-year period that began to run on February 22, 2008.

Section 1113 also provides for a six-year limitations period from "the date of discovery of such breach or violation" where there is "fraud or concealment[.]"  For the reasons stated *infra* Section III., this Court FINDS that there is a genuine issue of material fact as to whether there was "fraud or concealment" as to Defendants' cancellation of the Policy and Defendants' failure to provide timely notice of the cancellation. As a result, this Court also FINDS that there is a genuine issue of material fact as to whether the six-year limitations period applicable to cases of "fraud or concealment" applies in this case.  Thus, Defendants are not entitled to judgment as a matter of law as to the statute of limitations issue.  See Rule 56(a). Defendants may revisit the statute of limitations issue based on the evidence adduced at trial.

## III. **Fraud or Concealment**

The Court now turns to Defendants' argument that they are entitled to summary judgment on the merits of Plaintiff's claims.

As previously noted, "[i]ndividual substantive relief under ERISA is available where an employer actively and deliberately misleads its employees to their detriment. In such cases, wrongs will be undone and means found to make benefits available, . . . . Even where benefits are not available under the applicable plan, 'appropriate' equitable relief may be awarded." Peralta, 419 F.3d at 1075 (footnote and citations omitted). Defendants argue that Plaintiff has not presented the evidence necessary to survive summary judgment on the issue whether Defendants actively and deliberately misled Hirata to his detriment. Similarly, Defendants also argue that Plaintiff has not presented sufficient evidence to survive summary judgment on the issue whether Defendants engaged in fraud or concealment.

The Ninth Circuit has recognized that the six-year limitations period for "fraud or concealment"

> applies only when the defendant himself has taken steps to hide his breach of fiduciary duty. Other circuits have held that the "fraud or concealment" exception in the statute incorporates the common law doctrine of "fraudulent concealment." See Larson v. Northrop Corp., 21 F.3d 1164, 1172–73 (D.C. Cir. 1994); Radiology Ctr.[, S.C. v. Stifel, Nicolaus & Co.], 919 F.2d [1216,] 1220 [(7th Cir. 1990)]; Schaefer v. Arkansas Medical Soc'y, 853 F.2d 1487, 1491 (8th Cir. 1988). Under that

doctrine, a statute of limitations may be tolled
only if the plaintiff "establishes 'affirmative
conduct upon the part of *the defendant* which
would, under the circumstances of the case, lead a
reasonable person to believe that he did not have
a claim for relief.'" <u>Volk v. D.A. Davidson &
Co.</u>, 816 F.2d 1406, 1415 (9th Cir. 1987) (emphasis
added) (quoting <u>Gibson v. United States</u>, 781 F.2d
1334, 1345 (9th Cir. 1986), <u>cert. denied</u>, 479 U.S.
1054, 107 S. Ct. 928, 93 L. Ed. 2d 979 (1987));
<u>see Greenwald v. Manko</u>, 840 F. Supp. 198, 203
(E.D.N.Y. 1993) ("[T]he doctrine of fraudulent
concealment tolls the statute of limitations only
as to those defendants who committed the
concealment.") (citation omitted). "Plaintiffs
may not generally use the fraudulent concealment
by one defendant as a means to toll the statute of
limitations against other defendants." <u>Griffin v.
McNiff</u>, 744 F. Supp. 1237, 1256 n.20 (S.D.N.Y.
1990), <u>aff'd</u>, 996 F.2d 303 (2d Cir. 1993); <u>see
also</u> <u>O'Brien v. National Property Analysts
Partners</u>, 719 F. Supp. 222, 232 (S.D.N.Y. 1989);
<u>Bingham v. Zolt</u>, 683 F. Supp. 965, 975 (S.D.N.Y.
1988).

<u>Barker v. Am. Mobil Power Corp.</u>, 64 F.3d 1397, 1402 (9th Cir.

1995) (some alterations in <u>Barker</u>).

Plaintiff has presented evidence that Hirata believed

he had the Policy until the time of his death. [Yoneshige Decl.

at ¶ 6 (stating that, during a September 13, 2007 meeting that

Hirata and Yoneshige had with an estate planning attorney, Hirata

told the attorney that the Policy was one of his UWI benefits);

<u>id.</u> at ¶ 7 (describing December 17, 2007 conversation with

Matsunaga about using the Policy to pay for Hirata's medical

expenses); Kimoto Suppl. Decl., Exh. 2 at 3 (Client Asset

Information - Short Form dated Sept. 13, 2007 listing Policy

under item titled "LIFE INSURANCE").]

Defendants have presented a declaration from Matsunaga addressing Yoneshige's version of the December 17, 2007 conversation:

> I first deny that Rodney [Hirata] said or suggested anything to me. This was December 17, 2007, in a hospital room, under very painful circumstances. I went to the hospital to see my friend and to bring a book of photographs. He was very weak and could not speak. . . . I do not remember exactly what I said to Rodney that day, but I deny that I spoke about insurance to him; it would have been inappropriate and that was the last thing on my mind. I do have a recollection that Audrey [Yoneshige] brought up an insurance policy and it is possible that I said something like "that is a good idea; I will discuss it with John," just to respond to her comment, as that is in my nature, but I must admit that I was not focused on her at the time. What I do specifically recall, and what did stick with me, was she raised hospice care. When I left the hospital that day, I was emotional and upset; I felt that it may be the last time I would see Rodney. . . .

[Matsunaga Decl. at ¶ 4.] Matsunaga also addressed the cancellation of the Policy.

> In hindsight, I now recall that Mr. Ida and I did briefly discuss in early 2001, the matter of cancelling or lapsing the group life insurance policy because the company was at a low point financially and the premiums were probably going to go up. I do not recall seeing any paperwork regarding cancellation of the group life policy and do not recall taking any steps to notify any of the employees in the group life insurance policy, that UWI decided to cancel it, nor why. But I can state with absolute certainty, that there was never anything untoward or done in bad faith. At no time was there any intention by me or any principal of UWI to withhold information or deceive anyone. . . .

[Id. at ¶ 9 (emphasis omitted).]

Defendants also offer Ida's account of the cancellation

of the Policy:

> In the early part of 2001, I learned that
> General American Life Insurance Company was being
> taken over by another insurance company,
> Metropolitan Life (*aka* Met Life). At about the
> same time, I decided to cancel UWI's General
> American group life policy as a cost-cutting
> measure, to try to increase the company's cash-
> flow. I do not recall whether I took steps at
> that time, to notify any of the qualifying
> employees in the group life insurance policy, that
> UWI decided to cancel it, nor why. But assuming
> that I did not do so, there was never anything
> untoward or done in bad faith. At no time was
> there any intention by me or any principal of UWI
> to withhold information or deceive anyone,
> including my former colleague, Mr. Hirata. My
> best explanation, made in good faith, is that I
> was caught up in the day to day business of UWI
> and simply forgot.

[Ida Decl. at ¶ 5 (emphasis omitted).]

It is undisputed that Defendants cancelled the Policy

more than six years before Hirata's death. Defendants do not

recall whether they provided notice of the cancellation to the

participants in the Policy. Plaintiff has presented evidence

that Hirata believed until he died that he had the Policy.

Further, Plaintiff has presented Yoneshige's testimony about the

December 17, 2007 conversation, which could support a finding

that: 1) Matsunaga actively and deliberately concealed the

cancellation of the Policy from Hirata; and 2) Matsunaga said he

would discuss the matter with Ida. This arguably implicates both

Matsunaga and Ida and, viewing the record in the light most
favorable to Plaintiff, there is a genuine issue of material fact
whether Matsunaga made his representations during the
December 17, 2007 conversation in his individual capacity, or in
his capacity as a principal of UWI.  This would allow Plaintiff
to extend its "fraud or concealment" statute of limitations
argument from only Matsunaga to all Defendants.  See Barker, 64
F.3d at 1402 (noting that generally a plaintiff cannot use one
defendant's "fraud or concealment" to extend the statute of
limitations as to other defendants (citations omitted)).

        Defendants present conflicting declarations about the
December 17, 2007 conversation and what transpired when they
cancelled the Policy.  In this Court's view, which party's
version of the events is to be believed is a question of
credibility.  This district court has recognized that

            "[o]n summary judgment, [the court] must draw all
            justifiable inferences in favor of the nonmoving
            party, including questions of credibility and of
            the weight to be accorded particular evidence."
            Masson v. New Yorker Magazine, Inc., 501 U.S. 496,
            520 (1991); see Bravo v. City of Santa Maria, 665
            F.3d 1076, 1083 (9th Cir. 2011) ("If a rational
            trier of fact could resolve a genuine issue of
            material fact in the nonmoving party's favor, the
            court 'may not affirm a grant of summary
            judgment . . . because credibility determinations,
            the weighing of the evidence, and the drawing of
            legitimate inferences from the facts are jury
            functions, not those of a judge.'" (quoting Nelson
            v. City of Davis, 571 F.3d 924, 927 (9th Cir.
            2009))).

Ingalls v. Gov't Emps. Ins. Co., Civil Nos. 11-00244 JMS/RLP,

37

11-00488 JMS/KSC, 2012 WL 2873562, at *7 n.14 (D. Hawai`i July 12, 2012) (alterations in Ingalls).

Further, as to whether Hirata relied to his detriment on the existence of the Policy, the Court notes that it a close question because Plaintiff has not presented any direct evidence of Hirata's reliance. This Court, however, finds that it can be reasonably inferred from the existing record, which this Court views in the light most favorable to Plaintiff for purposes of the instant Motion, that Hirata remained employed at UWI in reliance on his compensation and benefits and that he forewent other options, such as the purchase of private life insurance. This Court therefore finds that there are genuine issues of material fact as to Hirata's reliance.

This Court therefore FINDS that there are genuine issues of material fact as to the merits of Plaintiff's ERISA claim and the statute of limitations argument. Thus, Defendants are not entitled to judgment as a matter of law as to the merits of Plaintiff's ERISA claim. See Rule 56(a).

## IV. **Plaintiff's Remedy**

Finally, Defendants argue that, even assuming *arguendo* that Plaintiff can prevail on the merits of the ERISA claim, Defendants are still entitled to summary judgment because Plaintiff cannot identify a cognizable equitable remedy. In the Dismissal Order, this Court stated:

Peralta, like Plaintiff in the instant case, sought monetary relief from the employer equal to the benefits that would have been available if the plan had not been cancelled. The Ninth Circuit noted that "[o]nly § 1132(a)(3) might permit such a recovery." [Peralta, 419 F.3d] at 1073. The Ninth Circuit, however, noted that the United States Supreme Court has rejected attempts to use injunctive relief and restitution as equitable means to secure a monetary award in an ERISA action. See id. at 1075 (citing Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002)). ERISA permits equitable claims seeking to prevent future losses, but does not permit the recovery of past due sums. See id. (citing Great-West, 534 U.S. at 211-12). . . .

2010 WL 2179812, at *7. Thus, this Court dismissed Plaintiff's request for restitution as to Count II. The Court also dismissed Plaintiff's request for specific performance and constructive trust as to Count II because those remedies were not warranted under the factual allegations of the Complaint. Id. at *8. The Court allowed Plaintiff to go forward on Count II's general prayer for "appropriate equitable relief" based on Plaintiff's argument that it would be able to identify during discovery was specific equitable relief is available to it under ERISA. Id. at *8-9.

In its Memorandum in Opposition, Plaintiff states that it is seeking an "accounting for profits". [Mem. in Opp. at 20.] "An accounting of profits . . . is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'" Reebok Int'l, Ltd. v. Marnatech Enters., Inc., 970 F.2d 552, 559 (9th

Cir. 1992) (some alterations in original) (quoting <u>Fuller Brush</u>

<u>Products Co. v. Fuller Brush Company</u>, 299 F.2d 772, 777 (7th

Cir.), <u>cert. denied</u>, 370 U.S. 923, 82 S. Ct. 1565, 8 L. Ed. 2d

503 (1962)).

> Although "some forms of equitable relief-such as
> constructive trusts, equitable liens, or
> accounting for the profits derived from wrongly
> held property-include the payment of money . . . ,
> these forms of relief are available in limited
> circumstances." <u>Eichorn v. AT & T Corp.</u>, 484 F.3d
> 644, 655 n.6 (3d Cir. 2007). Thus, for the
> plaintiffs, the question here is not whether
> disgorgement of profits or accounting for profits
> is an equitable remedy, but rather whether the
> plaintiffs have demonstrated that their claims for
> relief meet the requirements for applying this
> type of remedy. We agree with the District Court
> that the plaintiffs cannot recover under this
> theory without first identifying the profit
> generating property or money wrongly held by
> Unisys. <u>See</u> <u>Great-West</u>, 534 U.S. at 214 n.2, 122
> S. Ct. 708. Because the plaintiffs are unable to
> identify "money or property . . . belonging in
> good conscience" to them and clearly "trace[able]
> to particular funds or property in the defendant's
> possession," <u>see</u> <u>id.</u> at 213, 122 S. Ct. 708, they
> cannot recover profits from Unisys as a form of
> equitable relief. . . .

<u>In re Unisys Corp. Retiree Med. Benefits ERISA Litig.</u>, 579 F.3d

220, 238 (3d Cir. 2009) (some alterations in <u>Unisys</u>).

In <u>Great-West</u>, the Supreme Court noted that "for

restitution to lie in equity, the action generally must seek not

to impose personal liability on the defendant, but to restore to

the plaintiff particular funds or property in the defendant's

possession." 534 U.S. at 214 (footnote omitted). The Supreme

Court also stated:

There is a limited exception for an
accounting for profits, a form of equitable
restitution that is not at issue in this case.
If, for example, a plaintiff is entitled to a
constructive trust on particular property held by
the defendant, he may also recover profits
produced by the defendant's use of that property,
even if he cannot identify a particular res
containing the profits sought to be recovered.
See 1 [D.] Dobbs[, Law of Remedies] § 4.3(1), at
588 [2d ed. 1993]; id., § 4.3(5), at 608.
Petitioners do not claim the profits (if any)
produced by the proceeds from the state-court
settlement, and are not entitled to the
constructive trust in those proceeds that would
support such a claim.

Id. at 214 n.2.

Based on this authority, this Court CONCLUDES that an

accounting for profits is a cognizable equitable remedy that

would be available to Plaintiff under § 1132(a)(3)(B) if

Plaintiff prevails on the merits.  This remedy consists of the

profits produced by Defendants' cancellation of the Policy and by

Defendants' failure to provide Hirata with timely notice of the

cancellation.  This Court therefore CONCLUDES that Defendants are

not entitled to summary judgment on the issue of whether

Plaintiff has identified a cognizable equitable remedy.

**CONCLUSION**

On the basis of the foregoing, Defendants' Motion for

Summary Judgment, filed February 29, 2012, is HEREBY GRANTED IN

PART AND DENIED IN PART.  The Motion is GRANTED as to Plaintiff's

claims on behalf of the Trust, and DENIED in all other respects.

The denial of the Motion as to the standing issue and the statute

of limitations issue is WITHOUT PREJUDICE. Defendants may revisit those issues based upon the evidence adduced at trial.

Further, the Court GRANTS Plaintiff leave to file an amended complaint stating Yoneshige's authority to file suit on behalf of Hirata's Estate. The Court emphasizes that Plaintiff may not add any other factual allegations, nor may Plaintiff add new parties, claims or theories of liability. The Court CAUTIONS Plaintiff that, if Plaintiff does add other facts, parties, claims, or theories of liability, they will be automatically stricken. The Court ORDERS Plaintiff to file the amended complaint by no later than **September 28, 2012.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 28, 2012.



 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge